**Ex parte Victor MACEYRA.**

No. 69163.

Court of Criminal Appeals of Texas, En Banc.

Sept. 28, 1983.

Rehearing Denied May 22, 1985.

Victor Maceyra, pro se.

Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION

W.C. DAVIS, Judge.

The applicant in this habeas corpus proceeding contends he is awaiting the results of an appeal in the wrong place. We agree.

Applicant was convicted of theft, and his punishment assessed at 10 years' confinement. Prior to his filing of a timely notice of appeal he was transferred to the custody of the Department of Corrections (TDC).

While applicant was in the custody of TDC, the Governor revoked his parole on a previous conviction, upon the recommendation of the Board of Pardons and Paroles (the Board), and based upon the conviction for theft, but without the provision to applicant of notice by, or an opportunity to appear before, the Board.

It is uncontroverted that, without the revocation of applicant's parole, his incarceration *at TDC* would be without authorization. See Art. 42.09, V.A.C.C.P., § 4. Applicant contends that the actions of the Governor and the Board in revoking his parole were in violation of his right to due process, and that he is therefore entitled to await the outcome of his appeal in the custody of the sheriff of Lampasas County or to be released on bail pending appeal.

We need not reach applicant's due process contention, because we find the Board was without statutory authority in proceeding with the revocation of applicant's parole without providing applicant with an opportunity to be heard.

Art. 42.12, V.A.C.C.P., § 22 provides in pertinent part:

"Whenever a prisoner or a person granted a conditional pardon is accused of a violation of his parole, mandatory supervision, or conditional pardon on information and complaint by a law enforcement officer or parole officer, *he shall be entitled to be heard* on such charges before the Board or its designee under such rules and regulations as the Board may adopt...." (Emphasis added)

Although the Board has promulgated rules pursuant to Art. 42.12, which rules purport to eliminate the right to be heard before the Board for those persons convicted of felonies while on parole, such rules may not subvert the statutorily granted right to be heard. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

We hold that the order purporting to revoke applicant's parole is void. Applicant is therefore improperly in the custody of TDC, and is remanded to the custody of the sheriff of Lampasas County to await the outcome of his appeal.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

This proceeding involves a post-conviction application for writ of habeas corpus brought under Article 11.07, V.A.C.C.P.

On original submission this Court held the Board of Pardons and Paroles was without statutory authority to proceed with the revocation of applicant's parole without providing the applicant with an opportunity to be heard as provided in Article 42.12, § 22, V.A.C.C.P. The Court's opinion held "the order purporting to revoke applicant's parole is void."

The record shows applicant was convicted of aggravated robbery on December 15, 1976, in Lampasas County and was sen-

tenced to 15 years' imprisonment on January 6, 1977 in the 27th District Court. No appeal was taken. Later applicant was released on parole. One of the parole conditions or rules was that he not violate any municipal, county, state or federal laws. While on parole, he was charged with committing burglary of a habitation. He was convicted by a jury of that offense on July 8, 1982, and the court assessed his punishment at 10 years' imprisonment with the sentence to run concurrently with the sentence in the earlier aggravated robbery conviction. After applicant was transferred to the Department of Corrections on July 20, 1982, by virtue of the burglary conviction, he gave notice of appeal from that conviction which was filed July 22, 1982.

On August 19, 1982, the Board of Pardons and Paroles met pursuant to § 145.-41(b)(5), Rules of the Texas Board of Pardons and Paroles to consider applicant's parole and make an initial determination of disposition. The hearing was held without notice to and in the absence of the applicant. The Board recommended to the Governor applicant's parole (on the aggravated robbery conviction) be revoked for violation of Rule (condition) No. 7 of his release in that he had been convicted of the felony offense of Burglary of a Habitation. On November 16, 1982, the Governor of the State of Texas revoked applicant's parole and issued an arrest warrant for the applicant.

In his habeas application applicant contends he was denied due process of law as enunciated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 2595, 33 L.Ed.2d 484 (1972). We need not answer the constitutional question of due process as the issue before us is controlled by the statutory provision upon which the applicant also relies.

Article 42.12, § 22, V.A.C.C.P., provides in part:

"Whenever a prisoner or a person granted a conditional pardon is accused of a violation of his parole, mandatory supervision, or conditional pardon on in-

formation and complaint by a law enforcement officer or parole officer, *he shall be entitled to be heard on such charges before the Board or its designee* under such rules and regulations as the Board may adopt." (Emphasis supplied.)

Section 145.41 of the Rules of the Texas Board of Pardons and Paroles provides:

"*§ 145.41 (.001.) Allegation of Violation: Review and Initial Disposition.*

"(a) At such time as the Board learns of an allegation of violation of one or more terms and conditions of release by an administrative releasee, the Board shall refer the matter to a parole panel for review and initial determination of disposition.

"(b) A parole panel shall review the information and make an initial determination to:

"(1) request the governor to order the issuance of a prerevocation warrant;

"(2) order the issuance of a notice of allegation of administrative release violations;

"(3) continue the release of the alleged violator pending disposition of any charges;

"(4) make final disposition of the matter by continuation of release under the same or modified conditions; or

"(5) recommend revocation and request the governor to issue a revocation warrant, provided that this action shall be taken only when the releasee has committed a felony offense during the time of his or her release and has been convicted at the trial court level and sentenced to penal incarceration for the offense, whether conviction is appealed or not.

"(A) Revocation of administrative release under paragraph (5) of this subsection shall be accomplished administratively and a release proceeded against hereunder shall not be entitled to an administrative release revocation hearing;

"(B) After the panel has acted under subsection (b)(5) of this section, further proceedings shall be in accord with § 145.53 (205.03.03.020) of this title (relating to Revocation of Administrative Release (Parole, Mandatory Supervision) Recommendation; Proclamation; Warrant).

"(C) Should the releasee's conviction be reversed by a court of competent jurisdiction then he or she shall be entitled to reinstatement of the administrative release previously revoked hereunder, upon notification of the board of said judicial action and provision to the board of a certified copy of the judicial order effectuating the reversal; provided, however, that the board may proceed against a releasee reinstated under the subsection on the basis of any of the allegation(s) of violation previously filed against the releasee but not yet disposed of."

On rehearing the State argues the Board is authorized to adopt rules and regulations governing parole revocation. In non-felony conviction cases, the Board has designated its own agents, denominated "hearing officers" to hear violation of parole cases. See Rules of the Texas Board of Pardons and Paroles, §§ 141.111 and 145.45(i), 145.47(6) and 147.1–147.7. In cases falling within the ambit of the automatic revocation rule [§ 145.41(b)(5) ], the State argues, the Board of Pardons and Paroles has *de facto* designated the District Court of the State of Texas in which the criminal trial on the new felony offense is held as its "designee" for the purposes of § 22 of Article 42.12, V.A.C.C.P.

The State urges the Board has merely deferred its fact-finding responsibility to another forum; that the district court is statutorily and constitutionally required to afford the parolee greater procedural safeguards and protections than the Board is required to afford.

It is true that in *Morrissey* the Supreme Court, in discussing due process requirements, made clear that a parolee cannot relitigate issues determined against him in other forums such as when the revocation of parole is based on conviction of another crime. *Morrissey v. Brewer*, 408 U.S. at 492, 92 S.Ct. at 2605.

The State contends that it is much more economical for the State to maintain the automatic revocation rule of § 145.41(b)(5); that the parolee's rights are fully protected; that it has never been the policy of the Board to have a parolee confined in the Department of Corrections as the result of a new felony conviction while remaining on parole on an older felony conviction where the new conviction represented a violation of parole granted in connection with an older conviction; that no mitigating circumstances presented could justify allowing a parolee to remain on parole where he has violated his parole conditions by committing a felony for which he has been convicted and is now incarcerated.

In enacting § 145.41(5) of its Rules, the Board, however, was without the scope of its authority, no matter how seemingly economical, logical and reasonable the rule may seem where there has been a violation of parole by the parolee committing a felony offense which has resulted in conviction in a district court.

Article 42.12, § 22, gives the Board the right to make rules and regulations relating to the hearing, but the Board cannot by its rules abrogate the statutorily granted right to a hearing.

A mere reading of said § 22, in light of the State's interpretation, raises a number of questions. First of all, the issue of separation of powers, Article II, § 1, Tex. Constitution, may the Board, an agency of the Executive Branch of the government, designate a district court, with or without its consent or knowledge,[1] to be the Board's agent in conducting hearings on parole violations? Putting aside the ques-

---

1. There is nothing in this record to show the Board has notified or attempted to notify the district courts of this state that the Board considers the courts as its designees under Article 42.12, § 22.

tion of the separation of the powers, we further note that Article 42.12, § 22, provides the parolee is entitled to be heard on "such charges" referring to violations of parole. Nothing in this record shows that a copy of the "charges" had been brought to the attention of the district court or served upon the applicant. In fact, in the instant case it does not appear that the Board sought to invoke the revocation procedure until after the conviction in district court, and the "charges" were not even drafted until then. The district court is not required, during the prosecution of an offense upon indictment or felony information, to turn aside and determine if parole "charges" have been served upon the parolee-defendant or to hear evidence relevant to such "charges" but immaterial to the prosecution before it.

Much more could be written, but needless to say we hold that § 145.41(b)(5) exceeds the statutory authority of the Board insofar as it attempts to deprive a parolee of a hearing on "charges" to which he is entitled to be heard by virtue of § 22 of Article 42.12, V.A.C.C.P.

█ The hearing conducted by the Board in the instant case without notice to and in absence of the applicant although in conformity with § 145.41(b)(5) of the Board's rules violated the statutory provisions of Article 42.12, § 12, depriving the applicant of an opportunity to be heard. The Governor's order revoking applicant's parole based upon the recommendation of the Board following the ex parte hearing is void.

█ With regard to the issue of a request for a revocation hearing, it does not appear from this record that the applicant made any request for a hearing until such time as he filed his post-conviction writ of habeas corpus. There is, however, no showing of any affirmative waiver of such hearing.

We are aware that this Court in 1960 interpreted a forerunner of Article 41.12, § 22, supra,[2] with regard to this matter. In *Ex parte Lewis*, 170 Tex.Cr.R. 254, 339 S.W.2d 900 (1960), it was simply said: "The statute does not impose any mandatory duty upon the board to initiate and conduct a hearing." There was no reasoning from the language of the statute[3] or otherwise, and no citation of authority. Subsequently an inmate sought credit for time spent on parole which was revoked without a hearing. In *Ex parte Sellars*, 384 S.W.2d 351 (Tex.Cr.App.1964), this Court stated, "Relator is in no position to question the failure of the Board of Pardons and Paroles to hold a hearing on the question of revocation of his parole. *Ex parte Lewis*, 170 Tex.Cr.R. 254, 339 S.W.2d 900." The opinion is otherwise silent whether there was a request for a parole revocation hearing by Sellars.

In *Loper v. Beto*, 440 F.2d 934 (5th Cir. 1971), the federal court interpreted *Lewis* as requiring a request for a parole revocation hearing as a prerequisite under the Texas statute. And *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir.1975), cited *Lewis* in a footnote in determining that in pre-*Morrissey* cases in Texas a request for a hearing was necessary.

Whatever validity *Lewis* may have had, it has now been seriously eroded. The statute has been amended three times since the decisions in *Lewis* and *Sellars*,[4] and while

---

**2.** Article 781d, § 22, V.A.C.C.P., 1925, as amended by Acts 1957, 55th Leg., p. 466, ch. 226. The forerunner of Article 781d, supra, was Article 781b, V.A.C.C.P., 1925.

**3.** The statute (Art. 781d, § 22, supra) provided that the hearing "shall" be held within 45 days of the date of arrest and at a time and place set by the Board. It would appear that the Legislature intended some burden to be placed on the Board with regard to the hearing. The language in Article 781d, supra, was the same as in Arti-

cle 781b, § 20, V.A.C.C.P., 1925, the original Adult Probation and Parole Law (Acts 1947, 50th Leg., p. 1049, ch. 452).

**4.** Acts 1965, 59th Leg., Vol. 2, p. 317, ch. 722, enacting Article 42.12, V.A.C.C.P.; Acts 1973, 63rd Leg., p. 1235, ch. 447; Acts 1977, 65th Leg., p. 925, ch. 347. The 1973 amendment to Article 42.12, § 22, supra, extended the time for a hearing from 45 to 60 days, and the 1977 amendment extended the time to 90 days.

the language is still somewhat similar, there is nothing to indicate that a request is a prerequisite for a hearing. There has never been statutory language so indicating. Further, the due process decision of *Morrissey* has had its impact. It has been held that it is the burden of the Board of Parole, not the parolee, to see that a proper hearing is conducted. See *Preston v. Piggman*, 496 F.2d 270, 274 (6th Cir.1974); *Tunks v. Sigler*, 427 F.Supp. 455 (D.C.Cal. 1976).

We hold that, in absence of an affirmative waiver, intelligently and knowingly given, Cf. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970), a parolee is entitled to the parole revocation hearing provided in Article 42.12, § 22, supra, independent of any due process requirements. No request is essential to trigger the entitlement to such a statutory hearing. *Lewis* and *Sellars* are overruled to the extent of any conflict herewith.

The State's motion for rehearing is overruled.

CLINTON, Judge, concurring.

Today the Court delivers opinions in a trilogy of causes raising a common question. That is, when the Board of Pardons and Paroles ("Board") comes to consider whether parole is to be revoked, what process is due a parolee who, by being convicted of a felony offense committed while released on parole, is shown to have violated a validly imposed obligation and condition of release that the parolee "shall obey all Municipal, County, State and Federal laws?"[1]

Implicated, of course, are the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and the Due Course Clause of Article I, § 19 of the Constitution of the State of Texas, as well as Article 42.12, § 22, V.A.C.C.P. However, though we discuss the constitutional implications in *Ex parte Glenn*, 690 S.W.2d 578 (Tex.Cr.App. delivered this day), they are not resolved because in all the causes we find the answer in the statute. Along the way we also find that the Board has promulgated a rule "without the scope of its authority, no matter how seemingly economical, logical and reasonable the rule may seem ...," and conclude, therefore, that we need not reach the question of its constitutionality.

Essentially we are holding that in enacting Article 42.12, § 22, supra, the clear legislative intent is that "a parolee is entitled to the parole revocation hearing [so provided]," and though no request is made, without "an affirmative waiver, intelligently and knowingly given," (p. 577), the statute mandates that the Board "give every parolee the right to be personally heard at parole revocation proceedings," *Ex parte Johnson*, 690 S.W.2d 585 (Tex.Cr.App. this day decided).

In the matter of a parole revocation hearing Article 42.12, § 22 is so global in nature as to foreclose exception. That the statute authorizes the Board to hold the hearing "under such rules and regulations as the Board may adopt" does not bestow power and authority to promulgate rules and regulations effectively to deny any charged parolee the right to be heard. The Legislature has neither enacted nor delegated authority for the Board to provide for an "automatic revocation rule," as Rule 145.-41(b)(5) is characterized. The State suggests the rule is "an economy," such that "it should receive the approval of the Court." But any merit to that suggestion is for the Legislative Department to decide. Such a determination of public policy lies outside the realm of the Judicial Department.

With those observations I join the opinions of the Court in the quartet of causes we decide today.

1. The same question is raised in another case, but since it has been made to appear that the applicant has finally discharged his sentences and as a consequence is no longer in custody or under restraint, that matter is now moot; accordingly with an unpublished per curiam opinion we have dismissed his application.

TEAGUE, Judge, concurring.

For the reasons I have stated in the concurring opinion that I filed in *Ex parte Glenn,* 690 S.W.2d 578 (Tex.Cr.App.1985), I only concur.